Erika M. Nash, Wyo. Bar # 6-3867
enash@lrw-law.com
Aaron J. Lyttle, Wyo.Bar # 7-4726
alyttle@lrw-law.com
Long Reimer Winegar Beppler LLP
2120 Carey Ave. Suite 300
P.O. Box 87
Cheyenne, WY 82003
307-635-0710
307-635-0413 (fax)

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 AUG 23   PM 2: 03

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| TURNING POINT DISTRIBUTION, LLC D/B/A URBAN CARRY HOLSTERS, a Florida limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CONCEALED CARRY CHOICES, D/B/A DON'T TREAD ON ME CONCEAL AND CARRY HOLSTERS, a Wyoming business of unknown type; INNOVATIVE INNOVATIONS, INC., D/B/A DR. MOM OTOSCOPES, a Wyoming Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 16-CV-224-S<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Turning Point Distribution, LLC, a Florida limited liability company, d/b/a Urban Carry Holsters, for its causes of action against Defendants Concealed Carry Choices, a Wyoming business of unknown type, d/b/a Don't Tread On Me Conceal and Carry Holsters, and Innovative Innovations, Inc., d/b/a Dr. Mom Otoscopes, a Wyoming corporation, alleges and states as follows:

### NATURE OF THE CASE

1. This is an action for false designation of origin and unfair competition under the Lanham Act of 1946, as amended (15 U.S.C. §1125(a)).

### THE PARTIES

2. Plaintiff Turning Point Distribution, LLC ("Plaintiff" or "TPD"), is a Florida

limited liability company, with its principal place of business in Sanford, Florida.

3. Upon information and belief, Defendant Concealed Carry Choices d/b/a Don't Tread On Me Conceal and Carry Holsters ("Defendant DTOM") is a business of unknown type having its principal place of business in Laramie, Wyoming.

4. Upon information and belief, Defendant Innovative Innovations, Inc. ("Defendant Innovative"), d/b/a Dr. Mom Otoscopes, is a Wyoming corporation having its principal office address at 1621 Central Ave. Cheyenne, WY 82001.

5. The true names and capacities of the Defendant named herein as DOES 1 through 10 are other parties or entities who are not currently known to Plaintiff which are liable to Plaintiff for the damages complained of herein. Therefore, Plaintiff sues said Defendant, whether individuals, corporations, or another type of entity by these fictitious names. Plaintiff will seek leave of this court to amend its complaint to include the actual names of said Defendant when their identities are determined during the course of this litigation. Plaintiff incorporates by reference herein all paragraphs of this complaint against said unknown Defendant.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act) and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks).

7. Upon information and belief, Defendant DTOM is subject to this Court's specific and general personal jurisdiction due to its business activities in this Judicial District, regularly soliciting business in this Judicial District, deriving substantial revenue from goods and services sold to individuals in this Judicial District, and committing actions that it knew or should have known would cause injury to Plaintiff in this Judicial District.

8. Upon information and belief, Defendant Innovative is subject to this Court's

specific and general personal jurisdiction due to its domicile in the State of Wyoming, its business activities in this Judicial District, regularly soliciting business in this Judicial District, deriving substantial revenue from goods and services sold to individuals in this Judicial District, and committing actions that it knew or should have known would cause injury to Plaintiff in this Judicial District

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

#### *Plaintiff's "Urban Carry" Holster Trade Dress*

10. Plaintiff is the owner of U.S. Trademark Registration No. 4,862,407, for the URBAN CARRY design mark for "Gun belts; Holsters; Pistol holsters" which registered on December 1, 2015, and is still valid to the present day (the "URBAN CARRY Design Mark"):



11. Plaintiff also uses the following design mark (the "Coffin Logo") in connection with the sale of various products including holsters, belts, and clothing items:



12. Since at least as early as August 2014, Plaintiff has been selling, among other goods, a specially designed concealed firearm holster (the "Urban Carry Holster"), which Plaintiff markets and promotes using both the URBAN CARRY Design Mark and the Coffin Logo (together, the "Urban Carry Marks"). The following are photographs of Plaintiff's Urban

Carry Holster:

 

13. The Urban Carry Holster is especially unique and distinctive because it is designed to be worn inside of a wearer's pants such that the associated firearm is not only concealed, but is more securely positioned. The wearer connects the top portion of the holster to their belt while the lower portion of the holster is positioned inside the wearer's pants.

14. The Urban Carry Holster is further unique and distinctive because the design of the holster permits easy access to the concealed firearm. Specifically, the wearer can grip the belt-fastener flap and by raising it upwardly, the bottom portion of the holster moves upwardly at the same time, thus pushing the firearm upwardly to the top of the wearer's pants where it can then be easily grasped.

15. In addition to the unique firearm holstering functionality, the Urban Carry Holster also has a unique ornamental shape and design – the distinctive six-sided "coffin" shape of the holster as well as belt-fastener flap (the "Urban Carry Holster Trade Dress").

16. Since Plaintiff began marketing, promoting, and selling the Urban Carry Holster, Plaintiff's sales of the Urban Carry Holster have been phenomenally successful.

17. Since August 2014 to the present, Plaintiff has sold well over 50,000 units of the Urban Carry Holster.

18. Plaintiff's official video promoting the Urban Carry Holster has been viewed in excess of 10 million times (and in excess of 16 million impressions). Plaintiff continues to post new videos showcasing and promoting the Urban Carry Holster, with its most recent video released on or about July 27th garnering over 140,000 views within a week.

19. Plaintiff's Urban Carry Holster has also been the subject of widespread media attention as well as attention from gun owners nationwide through social media.

20. Gun owners across the country have posted their own videos on YouTube and Facebook showcasing Plaintiff's Urban Carry Holster and its distinctive look – with the viewership of such videos ranging from 17,000 views to 7.7 million views.

21. Since the introduction of the Urban Carry Holster, Plaintiff has spent approx. $300,000 in advertising and promotional efforts specifically directed to the Urban Carry Holster.

22. Plaintiff extensively advertises the Urban Carry Holster through paid advertising links on Google, Facebook, Amazon, eBay, Pinterest, and Bing.

23. Plaintiff's extensive online advertising efforts include search ads, banner ads, and video advertising. Search ads for Plaintiff's Urban Carry Holster have appeared in response to customer internet searches over 7.2 million times with over 669,000 customers seeing such ads clicking on the ad. Banner ads for Plaintiff's Urban Carry Holster (featuring the Urban Carry Marks and showing the Urban Carry Holster Trade Dress) have appeared to customers browsing various websites over 62.9 million times with over 192,000 customers viewing such banner ads clicking on the ad Plaintiff's video advertising promoting the Urban Carry Holster has appeared to customers browsing various websites over 17.8 million times with over 2.5 million of those views designated as a "complete view" of the entire video.

24. The unique shape and design of Plaintiff's Urban Carry Holster have also garnered widespread attention from law enforcement agencies who, as a result of Plaintiff's Urban Carry Holster, are advising their law enforcement officers on alternative pat-down procedures given the unique nature of the firearm concealment provided by Plaintiff's Urban Carry Holster – and specifically identifying Plaintiff's Urban Carry Holster both by reference to the Urban Carry Marks as well as the Urban Carry Holster Trade Dress. These law enforcement agencies and officers immediately recognize the Urban Carry Holster Trade Dress as identifying Plaintiff's Urban Carry Holster.

25. Plaintiff has run full-page advertisements showcasing the Urban Carry Holster in major firearm industry publications with widespread circulation nationwide.

26. Plaintiff has attended and sponsored many well-known industry trade shows throughout the United States at which Plaintiff's Urban Carry Holster is prominently featured, showcased, and promoted, including most recently sponsoring the United States Concealed Carry Association (USCCA)'s Concealed Carry Expo (2016) in Atlanta, and exhibiting at the Great American Outdoor Show, the largest outdoor show with over 200,000 in attendance in 2016. Plaintiff will also be an exhibitor at the 2017 SHOT Show, the largest trade show for the firearms, ammunition, hunting and shooting accessories industry attracting more than 62,000 industry professionals from all 50 states and 100 countries, where Plaintiff's Urban Carry Holster will be featured center stage.

27. Because of widespread notoriety and recognition that the Urban Carry Holster has obtained in the marketplace and the phenomenal success Plaintiff has encountered with its sales of the Urban Carry Holster combined with the connection between the Urban Carry Holster Trade Dress and both the URBAN CARRY Mark and the Coffin Logo used by Plaintiff for selling the Urban Carry Holster, consumers have come to immediately recognize the Urban

Carry Holster Trade Dress as signifying and identifying the conceal gun holster product sold by Plaintiff under the Urban Carry Marks.

28. Plaintiff has spent considerable time, effort and money to advertise, promote, and market the Urban Carry Marks and the Urban Carry Holster Trade Dress in connection with Plaintiff's Urban Carry Holster throughout the United States.

29. By virtue of Plaintiff's extensive, continuous, and exclusive use of the Urban Carry Marks and the Urban Carry Holster Trade Dress in connection with Plaintiff's Urban Carry Holster, Plaintiff's Urban Carry Marks and Urban Carry Holster Trade Dress have come to be recognized and relied upon by consumers as uniquely identifying Plaintiff's Urban Carry Holster and distinguishing Plaintiff's Urban Carry Holster from similar goods and services offered by others.

30. By virtue of Plaintiff's extensive, continuous, and exclusive use of the Urban Carry Marks and the Urban Carry Holster Trade Dress in connection with Plaintiff's Urban Carry Holster, Plaintiff has developed substantial goodwill in the Urban Carry Marks and the Urban Carry Holster Trade Dress throughout the United States and as a result, the Urban Carry Marks and the Urban Carry Holster Trade Dress have come to be associated exclusively with Plaintiff and the Plaintiff's Urban Carry Holster.

### *Defendant's Infringing Activities*

31. Upon information and belief, Defendants, well after Plaintiff's use of the URBAN CARRY Design Mark, Plaintiff's use of the Coffin Logo, and Plaintiff's use of the Urban Carry Holster Trade Dress, all in connection with the Urban Carry Holster, began selling (and is still continuing to sell to the present day) a concealed firearm holster that is a direct knock-off of Plaintiff's Urban Carry Holster (the "Infringing Goods"). The following is a photograph of Defendants' Infringing Goods:



32. Upon information and belief, Defendants are marketing, promotion, and selling the Infringing Goods on Defendants' websites http://dtomholster.com/dcch14.html and http://www.concealedcarrychoices.com/dcch14.html as well as on Amazon.com and other websites. *See* <u>Exhibit A</u> attached hereto and incorporated by reference. Defendants even identify and promote their Infringing Goods as "our version of the 'Urban Carry Holster.'" The Infringing Goods are sold at a significantly lower price than Plaintiff's Urban Carry Holster.

33. Defendants' Infringing Goods are identical in nature to Plaintiff's Urban Carry Holster and identical in look and shape to the Urban Carry Holster Trade Dress as well as evocative of the design portions of the Urban Carry Marks, and thus likely to be confused with Plaintiff's Urban Carry Holster marketed using the Urban Carry Holster Trade Dress and marketed under the Urban Carry Marks.

34. Moreover, while the nature of the Infringing Goods is identical to Plaintiff's Urban Carry Holster, the quality of the Infringing Goods is vastly inferior to Plaintiff's Urban Carry Holster. The threading found in the Infringing Goods is significantly thinner and poorer quality resulting in tearing, ripping, and sliding issues when used by consumers.

35. In addition, the Infringing Goods claim to use "buffalo leather," but upon information and belief, such leather is actually water buffalo leather which is significantly cheaper in cost and significantly lower in quality compared to the leather used by Plaintiff for

Plaintiff's Urban Carry Holster.

36.     Defendants' Infringing Goods will be perceived as the same as Plaintiff's Urban Carry Holster identified by the Urban Carry Holster Trade Dress by consumers who are likely to believe that the source and origin of the Infringing Goods emanate from or are sponsored by or affiliated with Plaintiff.

37.     Due to the low quality, low price, and inferior nature of Defendants' Infringing Goods, the continued sale of the Infringing Goods by Defendants in violation of Plaintiff's trademark rights to the Urban Carry Marks and Urban Carry Holster Trade Dress compromises Plaintiff's ability to control the reputation and goodwill that consumers have come to associate with both the Urban Carry Marks and Urban Carry Holster Trade Dress in connection with Plaintiff's Urban Carry Holster.

38.     Upon information and belief, Defendants' use of the Urban Carry Holster Trade Dress in connection with Defendants' Infringing Goods has caused (and is continuing to cause) actual confusion in the marketplace, among consumers who mistakenly believe that Defendants' Infringing Goods are affiliated with, connected to, or associated with Plaintiff's Urban Carry Holster having the Urban Carry Holster Trade Dress and marketed under the Urban Carry Marks.

39.     On March 11, 2016, Plaintiff's counsel sent a letter to Defendants via U.S. Mail demanding that Defendants cease and desist from selling any Infringing Goods which copy the Urban Carry Holster Trade Dress or infringe upon the Urban Carry Marks. To date, Defendants have not responded to Plaintiff's letter nor have they complied with Plaintiff's demands.

40.     Upon information and belief, Defendant has continued to use the Urban Carry Holster Trade Dress in connection with Defendants' sale of the Infringing Goods despite having actual notice of Plaintiff's rights to the Urban Carry Marks and the Urban Carry Holster Trade Dress in connection with Plaintiff's Urban Carry Holster.

41. Upon information and belief, Defendants' initial copying and ongoing use of the Urban Carry Holster Trade Dress in connection with the Infringing Goods was done willfully, intentionally, and deliberately with full knowledge and willful disregard of Plaintiff's prior established rights in the Urban Carry Marks and the Urban Carry Holster Trade Dress for Plaintiff's Urban Carry Holster.

42. Unless enjoined by this Court, Defendants' continued use of the Urban Carry Holster Trade Dress in connection with Defendants' Infringing Goods is likely to continue causing consumers to be confused, mistaken, or deceived as to the affiliation, connection or association of Defendants' Infringing Goods with Plaintiff and as to the origin, sponsorship, or approval of Defendants' Infringing Goods by Plaintiff.

## FIRST CLAIM FOR RELIEF

**(False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a))**

43. Plaintiff hereby realleges and incorporates by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

44. This is a claim for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Defendants' use of the Urban Carry Holster Trade Dress and statement of its Infringing Goods as "our version of the 'Urban Carry Holster'" constitutes a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendants with Plaintiff and as to the origin, sponsorship, or approval of Defendant's Infringing Goods and commercial activities by Plaintiff.

46. Upon information and belief, Defendants' production, marketing, and selling of a concealed gun holster which has the same shape and appearance as Plaintiff's Urban Carry

Holster Trade Dress was done willfully, intentionally, and deliberately with full knowledge and willful disregard of Plaintiff's well-known and prior established rights in the Urban Carry Holster Trade Dress.

47. As a direct and proximate result of Defendants' false designation of origin and unfair competition, Plaintiff has suffered, and unless enjoined by this Court will continue to suffer, monetary loss and irreparable injury and other damage to Plaintiff's business, reputation and goodwill associated with Plaintiff's Urban Carry Marks and Urban Carry Holster Trade Dress for which Plaintiff has no adequate remedy at law.

48. Defendant's continued and ongoing willful infringement of Plaintiff's trademark and trade dress rights makes this case exceptional under 15 U.S.C. § 1117(a), thereby entitling Plaintiff to an award of its reasonable attorneys' fees associated with bringing this action

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. That the Court enter judgment in favor of the Plaintiff and against the Defendants on all claims for relief alleged herein;

B. That a preliminary and permanent injunction issue pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116) enjoining and restraining the Defendants and their respective owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, from using, on or in connection with the manufacture, sale, importation, exportation, purchase, order, offer for sale, distribution, transmission, advertisement, display and promotion of any products or services, Plaintiff's Urban Carry Marks and/or Urban Carry Holster Trade Dress or any other marks or product shapes that are confusingly similar to the Urban Carry Marks or Urban Carry Holster Trade Dress, including but

not limited to the Infringing Goods as well as any other related goods and services;

C. That Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which the Defendant have complied with the injunction pursuant to 15 U.S.C. § 1116;

D. That Defendants be required to account to Plaintiff for any and all profits derived by Defendants and all damages sustained by Plaintiff by virtue of the actions of the Defendants complained of herein;

E. That Defendants be ordered to pay over to Plaintiff any and all profits derived by Defendants and all damages which Plaintiff has sustained as a consequence of the actions of the Defendants complained of herein pursuant to 15 U.S.C. § 1117, subject to proof at trial;

F. That the damages resulting from the actions of the Defendants complained of herein be trebled pursuant to 15 U.S.C. § 1117 and awarded to Plaintiff;

G. That an award of interest, costs, and attorneys' fees incurred by Plaintiff in prosecuting this action be awarded to Plaintiff; and

H. That Plaintiff be awarded all other relief to which Plaintiff is entitled and such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues raised in the Complaint which are triable by a jury.

DATED: this 19th day of August, 2016.        Respectfully submitted,

*[signature]*

**LONG REIMER WINEGAR BEPPLER LLP**
Erika M. Nash
Wyoming Bar #6-3867
Aaron J. Lyttle
Wyoming Bar #7-4726
2120 Carey Avenue, Suite 300
P.O. Box 87
Cheyenne, WY 82003
Tel. (307) 635-0710
Fax (307) 635-0413

**WEIDE & MILLER, LTD.**
Ryan Gile, Esq.
(*pro hac vice admission to be submitted*)
7251 W. Lake Mead Blvd., Suite 530
Las Vegas, NV 89128-8373
Tel. (702) 382-4804
Fax (702) 382-4805

*Attorneys for Plaintiff Turning Point Distribution, LLC, d/b/a Urban Carry Holsters*

# EXHIBIT A

# EXHIBIT A







